**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>VERVE DESIGN STUDIO, INC.<br><br>Defendant/Counterclaimant. | ) | Case No. 4:26-cv-00334<br><br>Hon. John A. Ross |

**RESPONSE IN OPPOSITION TO**
**PLAINTIFF/COUNTERCLAIM DEFENDANT'S**
**MOTION TO BIFURCATE COVERAGE ISSUE AND STAY DISCOVERY**

**COMES NOW**, Defendant VERVE Design Studio, Inc. ("**Defendant**" or "**VERVE**"), by and through its attorneys, Joseph C. Blanner, Matthew G. Koehler and the firm of McCarthy, Leonard, Kaemmerer & Miller, and hereby files VERVE's *Response in Opposition to Plaintiff/Counterclaim Defendant's Motion to Bifurcate Coverage Issue and Stay Discovery* ("**Response**"). VERVE's Response is filed to oppose *Admiral's Motion to Bifurcate Coverage Issue and Stay Discovery with Suggestion [in] Support* (Doc. 16) ("**Motion**") filed by Plaintiff/Counterclaim Defendant Admiral Insurance Company ("**Plaintiff**" or "**Admiral**").

## ARGUMENT

Plaintiff's Motion seeks two alternative forms of relief. First, Admiral seeks to bifurcate the claims in this case pursuant to Fed. R. Civ. P. 42(b). Motion at 2. Second, as an alternative to bifurcation, Admiral seeks for the Court to order the discovery to be conducted in two phases – first for its coverage declaratory judgment claim (that there is no coverage) and, second, for

VERVE's counterclaim for breach of contract (for the denial of coverage) and the wrongful denial of coverage. Motion at 2 & 4 (referencing Rule 26(c)).[1]

**A. Standard of Review.**

Rule 42(b) provides:

> "**Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial."

Fed. R. Civ. P. 42(b). The movant for bifurcation bears the burden of demonstrating that bifurcation is warranted. *Penford Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2009 WL 2030377, at *2 (N.D. Ia. July 13, 2009). *See also H.B. Fuller Co. v. TSE Indus., Inc*., 2020 WL 3867551, at *1 (D. Minn. July 9, 2020) (describing the burden as a "heavy burden").

For a bifurcation motion, a district court should consider "the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities of confusion." *O'Dell v. Hercules, Inc*., 904 F.2d 1194, 1202 (8th Cir. 1990). Additionally, the absence of any showing of prejudice by the movant is sufficient to warrant a

---

[1] It is observed Local Rule 3.04, Motions Concerning Discovery and Disclosure, requires a "motion relating to discovery" to include a certification from the movant's counsel that he or she conferred with the opposing counsel in good faith, but they were unable to "reach an accord." This required certification about the stayed or phased discovery topic is missing from Admiral's Motion. L.R. 3.04(A).

denial of a bifurcation motion. *H.B. Fuller*, 2020 WL 3867551, at *1. *See also Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000).

"Separate trials are an extreme remedy, however, as piecemeal litigation 'is not to be the usual course.'" *H.B. Fuller*, 2020 WL 3867551, at *1 (citation to internal quotation omitted).

Finally, a motion to bifurcate the case into two trials under Rule 42(b) is reviewed for an abuse of discretion. *Athey*, 234 F.3d at 362.

On the topic of phasing discovery, the court has broad power to limit or control the timing and sequence of discovery under Fed. R. Civ. P. 26(c). *See Sterling Computers Corp. v. Int'l Bus. Machines Corp*., 2024 WL 6994950, at *1 (D. S.D. Oct. 3, 2024). The party seeking to limit the timing and sequence of discovery must support the request with a showing of "good cause." *Id*. *See also* Fed. R. Civ. P. 26(c)(1).

**B. Plaintiff Failed to Meet Its Burden for Bifurcation or Phasing of Discovery.**

When weighing a movant's request to bifurcate a case into two separate phases and trials, courts typically look to neutral factors that generally relate to efficiency, managing control over the docket, and just and fair determinations of the issues presented by the parties' claims and defenses. *H.B. Fuller*, 2020 WL 3867551, at *2 (holding the insurer's motion failed to meet the "heavy burden" for bifurcation of issues of insured liability and policy coverage).

> Courts traditionally consider the following factors when deciding whether to order separate trials: (1) the complexity of the damages issue; (2) potential for juror confusion; (3) overlap of the issues to be tried; and (4) prejudice to either party. (citation omitted) In addition, courts may consider (1) whether the issues are triable by the court or by jury; (2) whether discovery has been directed to one trial on all

> issues; (3) whether the evidence for each issue is substantially different; and (4) the effect bifurcation would have on settlement negotiations.

*Penford*, 2009 WL 2030377, at *2 (quoting *Cedarapids, Inc. v. CMI Corp*., 1999 WL 33656876, at *1 (N.D. Ia. Oct. 26, 1999)) (denying the insurer's motion for bifurcation of coverage and bad faith issues, in part, because bifurcation would unnecessarily delay the case and prejudice the insured).

Admiral's premise for bifurcation is there is no coverage for the underlying claim that is presently being made by Seneca Development, LLC ("**Seneca**"), against VERVE. Motion at 2-3. Seneca's claims against VERVE have been made in a lawsuit filed with the Seneca Nation of Indians Peacemaker's Court, which lawsuit is currently pending before that court. Exhibit A, *Complaint*, at 1-22 (without the Complaint's exhibits). Generally, the Seneca claims concern "defective and improper" "work and services" for the project's mechanical (HVAC) system. Exhibit A at 2 (¶ 3). The claims against VERVE are for breach of contract, unjust enrichment, negligence, and professional negligence, and breach of an implied warranty. Exhibit A at 12-13 (¶¶ 52-59 (breach of contract)), 13 (¶¶ 60-62 (unjust enrichment)), 13-14 (¶¶ 63-66 (negligence)), 14-15 (¶¶ 67-70 (professional negligence)), and 17-18 (¶¶ 80-83 (implied warranty)).

Plaintiff admits in the Motion that VERVE's counterclaim against it (Plaintiff) is premised on allegations that it improperly denied coverage. Motion at 2.

Thus, Admiral acknowledges, on the one hand, an important point in this lawsuit concerns the topic of whether the insurance policy it issued to VERVE provides coverage for Seneca's claims against VERVE, but asks the Court, on the other hand, to bifurcate the case and discovery for the equally-important and opposing/converse topic of whether it breached its

insurance policy (contract) by the denial of coverage to VERVE for Seneca's claims against VERVE. Such a view and argument are certainly beneficial for Admiral.[2]

Admiral presents three reasons for bifurcation of VERVE's counterclaims and discovery for those claims. First, Admiral argues Defendant's counterclaims will "require expansive discovery into the insurer's internal claims handling, communications, underwriting, and legal analysis." Motion at 3 (section III.). It also argues VERVE's counterclaims implicate issues relating to Plaintiff's reliance on "legal advice" during the coverage analysis, which it believes will be intrusive and raise "complex privilege and work-product issues that should not be addressed unless and until coverage is established." *Id*. Finally, it is argued discovery for the counterclaims "will necessarily require extensive fact discovery beyond the insurer's claim handling, including deposition [sic] of multiple non-party witnesses involved in the underlying construction project, such as contractors, subcontractors, and other project participants." *Id*. That argument continues by contending "[c]oordination and taking those depositions which involve out of state non-party witnesses will be time-consuming and costly." *Id*.

The Motion, however, provides no factual details about what any of these supposed "expansive," "inherently intrusive," or "time-consuming" discovery would entail. The Motion simply uses broad, conclusory, statements without any details to meet Admiral's Rule 42(b) burden on the "extreme remedy" of "piecemeal litigation." *H.B. Fuller*, 2020 WL 3867551, at *1. *See also Ireland v. Bauer Corp*., 2006 WL 6869426, at *2 (W.D. Mo. Sept. 18, 2006) (noting

---

[2] Most parties in civil litigation would undoubtedly want to bifurcate a case (and discovery) to have its claims tried first before a court addresses the opponent's counterclaims and discovery in a second trial.

the defendant's bifurcation motion only utilized "nebulous legal phrases," which did not demonstrate bifurcation was warranted).

VERVE submits to the Court the facts alleged in the pleadings demonstrate that piecemeal litigation will not meet a goal of efficiency or judicial economy.

To begin, Plaintiff's Complaint identifies six dated-events for its declaratory judgment claim. First, a field inspection of the project was performed by VERVE in "June 2024." Complaint (Doc. 01) at 2 (¶ 8). Next, the Complaint alleges the "Developer and the General Contractor" contacted VERVE in "late 2024" to "discuss the mechanical system issues." *Id*. at 2 (¶9). Third, the Complaint alleges in "May 2025," the owner hired a mechanical engineer to evaluate the project's HVAC system. *Id*. at 2 (¶ 10). Then, the Complaint assets VERVE submitted an application for a claims-made insurance policy on June 10, 2025. *Id*. at 3 (¶ 11). Fifth, Admiral alleges it issued the professional liability policy to VERVE on August 14, 2025. *Id*. at 3 (¶ 12). And, finally, the Complaint alleges Seneca served VERVE with the summons and complaint from the Peacemaker's Court lawsuit on October 15, 2025. *Id*. 4 (¶ 16).

In Defendant's view, six dated events do not provide any reasonable impression of a supposed risk of "expansive" discovery for Admiral's internal claims handling, communications, underwriting, and legal analysis. Six events. The Motion does not even estimate how many people Admiral believes were involved in those six events, or the type or quantity of records that might be involved in the six events. Indeed, there are ***<u>no</u>*** persuasive facts or detailed explanations in the Motion on why or how six events present any risk of "expansive" discovery.

As to the concern over supposed "inherently intrusive" discovery over legal advice, the topic of legal advice was ***<u>first raised</u>*** by Admiral in its affirmative defenses. *See Admiral's Answer to Defendant's Counterclaim* ("**Admiral's Answer**") (Doc. 13) at 5 (¶ 13).

It is certainly opportunistic for Admiral to raise 'legal advice' as an affirmative defense to the claim about a breach of its contractual obligation to provide insurance coverage to VERVE for the Seneca claims, but then immediately seek to bifurcate the trial and discovery over that legal advice because it is "inherently intrusive." Not surprising, the Motion provides no facts or explanation on how discovery over the legal advice raised by Plaintiff in its affirmative defense will be intrusive, or even if such discovery will prejudice Plaintiff. *Athey*, 234 F.3d at 362 (holding the denial of a bifurcation motion was not an abuse of discretion as the insurer did not show that access to its claim files prejudiced its case). Contrastingly, allowing Plaintiff to raise an affirmative defense, but denying Defendant the ability to conduct discovery about the facts for that affirmative defense while Plaintiff continues to pursues its affirmative claim, would clearly prejudice VERVE. And, bifurcating VERVE's counterclaim and delaying discovery over the legal advice would not achieve efficiency. Conducting a deposition of an Admiral witness twice, once for facts about Admiral's claim, and once for facts about VERVE's counterclaim and Admiral's legal advice affirmative defense, is not efficient.

Lastly, on the topic of time-consuming discovery of non-party witnesses, this topic was indirectly raised in Admiral's affirmative defenses. Admiral alleged coverage under its professional liability policy is barred because VERVE "had knowledge of facts, circumstances, acts, errors, omissions, disputes, or conditions that a reasonable design professional would have expected to give rise to a claim, including known issues relating the HVAC system on the subject project, and failed to disclose such knowledge in the application for insurance." Admiral's Answer at 4 (¶ 2). This type of "reasonable design professional" defense obviously necessitates discovery of facts from the underlying project that Admiral contends would cause a reasonable design professional to "expect to give rise to a claim." As such, this is another situation in which

Admiral is raising a defense to the breach of contract claim for the denial of coverage for the Seneca claims, in the first instance, but asking the Court to bifurcate the trial and discovery that relates to that very affirmative defense.

In section IV of the Motion, Plaintiff contends its view on bifurcation of the trial and discovery will promote efficiency and avoid unnecessary disputes. Once again, the Motion is devoid of any facts to support the arguments about so-called efficiencies or dispute avoidances.

And, the argument in section IV that VERVE will not be prejudiced if its claims for breach of contract for the denial of insurance coverage and improper denial of coverage are bifurcated is truly hollow. VERVE will most definitely be prejudiced if Plaintiff is allowed to pursue its declaratory judgment claim that there is no coverage for Seneca's claims against VERVE, but VERVE is denied the ability to simultaneously conduct discovery to prove there is coverage and it was wrongly denied.

**C. Conclusion.**

Plaintiff admits its bifurcation and stayed discovery argument is presented to the Court now because it wants to file a summary judgment motion about its coverage denial. Motion at 2.

It is obvious that separating discovery on VERVE's counterclaim that denial of coverage was wrongly determined and a breach of the insurance policy (contract) would be a huge advantage to Plaintiff in pursuing a dispositive motion that there is no coverage. But, there is not a single court decision cited by Admiral that indicates justification for bifurcation and delaying or phasing discovery should be based on a party wanting to have a huge advantage in the litigation against the adverse party. Instead, Bifurcation should be based on ***neutral*** factors, such as the eight factors listed in *Penford*. 2009 WL 2030377, at *2.

Admiral has not provided any factual details in the Motion to support or explain why bifurcation and stayed discovery would meet any of these neutral factors or a "good cause" finding.[3] Caselaw instructs it is Admiral's burden, as the bifurcation movant, to provide those factual details in order to justify the "extreme remedy" of bifurcation and stayed discovery.

Therefore, for the reasons presented herein, Admiral's Motion for bifurcation and stayed discovery should be denied.

Respectfully submitted,

McCARTHY, LEONARD, KAEMMERER & MILLER

By: */s/ Matthew G. Koehler*

Joseph C. Blanner, #50908
jblanner@mlklaw.com
Matthew G. Koehler, #48760
mkoehler@mlklaw.com
825 Maryville Centre Dr., Ste. 300
Town & Country, Missouri 63017
(314) 392-5200 / (314) 392-5221 fax

*Attorneys for Defendant/Counterclaimant VERVE Design Studio, Inc.*

[3] It certainly will be prejudicial if Plaintiff uses its upcoming reply brief as an opportunity to offer and argue about factual details for the first time, which strategy would have prevented Defendant from evaluating and addressing such fact contentions in this Response.

**CERTIFICATE OF SERVICE**

I hereby certify on June 9, 2026, a true and complete copy of the above document was filed electronically with the Court and service was made through the Court's CM/ECF system on all parties of record.

*/s/ Matthew G. Koehler*

*Attorneys for Defendant/Counterclaimant VERVE Design Studio, Inc.*